IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GARY GROSVENOR,  CV. 03-1265-MA

    Petitioner,  OPINION AND ORDER

  v.

JEAN HILL,

    Respondent.

Anthony D. Bornstein
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

Hardy Myers
Attorney General
Lester R. Huntsinger
Senior Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301-4096

    Attorneys for Respondent

MARSH, Judge

    Petitioner, an inmate in the custody of the Oregon State Department of Corrections, brings this habeas corpus proceeding

1 -- OPINION AND ORDER

pursuant to 28 U.S.C. § 2254. For the reasons set forth below, petitioner's amended habeas corpus petition is granted.

## BACKGROUND

On July 12, 1995, petitioner was indicted for the sexual abuse of Kimberly Harris (age 10), and Charlene Dilbeck (age 12). In the same indictment, petitioner was charged with resisting arrest. Shortly thereafter, petitioner was indicted on charges of unlawful sexual penetration and two counts of sexual abuse involving Sabrina Givens (age 5). The cases were consolidated for trial.

Prior to trial, Judge J. Loyd O'Neal held that Sabrina Givens was unavailable for trial due to her inability to comprehend the oath and her limited recall of the events. Judge O'Neal indicated that this conclusion was premised upon the "in camera discussions with the child."[1] After hearing the testimony of Sabrina's mother, Alison Givens, and the investigating officer, Stanley Long, the judge held that a videotaped statement given by Sabrina Givens to Detective Sergeant Long would be admissible if offered at trial by the prosecution. The trial judge's holding was premised upon his conclusion that the out-of-court statement bore an indicia of reliability.

---

[1] There is a dispute throughout the state court record as to whether the trial judge personally met with Sabrina Givens or simply reviewed the videotape of her discussions with Detective Sergeant Long. This dispute is not determinative of the confrontation issue before this court.

At trial, Charlene Dilbeck and Kimberly Harris testified. Charlene testified that petitioner had lived in her home, and that one night she awoke to find petitioner touching her buttock underneath her panties. A few days later, Charlene told her father about the touching, but he did not report the abuse to the police. Charlene's father confirmed that his daughter told him of the abuse. On a later date, Charlene told Kimberly Harris of the abuse.

Kimberly Harris testified that she spent the night at Charlene's house, and that during the night petitioner pulled down her shorts and panties. Kimberly further testified that petitioner rubbed his penis against her leg. When she began to cry, he released her. The following day, Kimberly reported the abuse to Charlene, Charlene's mother, and her own mother. Charlene's father confirmed that petitioner was at his house when Kimberly stayed overnight, that petitioner had been drinking, and that he heard Kimberly crying during the night. Kimberly's mother testified that Kimberly reported the abuse to her, and that she subsequently reported the abuse to the police.

A videotaped statement of Sabrina Given was admitted at trial. Although not part of the trial transcript, Detective Sergeant Long summarized the videotape at the competency hearing as follows. Sabrina stated that she was at petitioner's house playing in a pool. When she came in to change her clothes, petitioner touched

3 -- OPINION AND ORDER

her three times.  She stated that he touched her "top private parts," that he put his finger in her "bottom private parts," and that it hurt.  She also stated that petitioner rubbed his penis with his hand and that "stuff came out".

Sabrina's mother, Alison Givens, testified that on July 2, 1995, Sabrina spent the night at petitioner's home.  Ms. Givens testified that when she picked Sabrina up, she "seemed a little nervous and scared."  Sabrina subsequently stated that "she didn't want to see [petitioner] anymore, that she was afraid of him."  When asked why, Sabrina replied that "he touched her breast" and "touched her private."  Sabrina's mother reported the abuse to the police on July 12, 1995.

On July 25, 1995, Dr. David Candelaria examined Sabrina.  Dr. Candelaria testified that the measurement of Sabrina's hymenal opening was on the edge of being considered suspicious so as to be considered "non-specific".  Dr. Candelaria explained that the lack of any concrete physical evidence of penetration is not unusual because (1) studies indicate that up to 75 percent of children who have been sexually abused will have a normal examination; (2) sufficient time passed between the alleged abuse and the examination for a tear to heal; and (3) penetration could occur without damage to the hymen.  Dr. Candelaria testified that when he asked Sabrina if she had been subjected to inappropriate or uncomfortable touching, she denied it.

Petitioner testified in his defense. Petitioner testified that he had "wrestl[ed] around" with Charlene and, on two or three occasion, may have "tagged her on her butt". Petitioner testified that he was at the Dilbeck house when Kimberly spent the night, but denied having any sexual contact with Kimberly. Petitioner testified that he may have touched Sabrina's chest area when lifting her out of the pool. He denied ever touching Sabrina for sexual gratification. Petitioner's girlfriend, Deanne Ginther, testified that petitioner was never alone with Sabrina on July 2, 1995.

On November 17, 1995, the jury returned a guilty verdict on all counts. Petitioner was sentenced to 93 months incarceration for the crimes against Charlene Dilbeck and Kimberly Harris, and a consecutive 100-month sentence for the crimes against Sabrina Givens.

Petitioner filed a direct appeal challenging the consolidation of the cases and the constitutionality of his sentence. Petitioner, with the permission of the court, filed a "*pro se* supplemental appellant's brief" raising additional constitutional claims. The Oregon Court of Appeals affirmed from the bench, and the Oregon Supreme Court denied review. State v. Grosvenor, 165 Or. App. 316, 995 P.2d 596, rev. denied, 330 Or. 331 (2000). Petitioner subsequently sought state post-conviction relief which

was denied. <u>Grosvenor v. Hill</u>, 187 Or. App. 114, 66 P.3d 1030, <u>rev. denied</u>, 335 Or. 510 (2003).

## **DISCUSSION**

I. **PROCEDURAL DEFAULT.**

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. <u>See</u> 28 U.S.C. § 2254(b)(1). To satisfy the exhaustion requirement, a prisoner must fairly present his federal claims to the state courts. <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004); <u>Casey v. Moore</u>, 386 F.3d 896, 911 (9th Cir. 2004).

A "fair" presentation requires that the prisoner adequately alert the state courts to the federal nature of the claim. <u>Duncan v. Henry</u>, 513 U.S. 364, 365-66 (1995). This may be accomplished by "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal." <u>Baldwin</u>, 541 U.S. at 32. A habeas petition from a state prisoner proceeding *pro se* is viewed more leniently for purposes of determining exhaustion. <u>Fields v. Waddington</u>, 401 F.3d 1018, 1021 (9th Cir. 2005); <u>Sanders v. Ryder</u>, 342 F.3d 991, 999 (9th Cir. 2003), <u>cert. denied</u>, 541 U.S. 956 (2004); <u>Peterson v. Lampert</u>, 319 F.3d 1153, 1159 (9th Cir. 2003).

If a state prisoner fairly presents his federal claims, this court nevertheless may not review them if the state court denied relief based upon an independent and adequate state rule, absent a showing of cause and prejudice, or that failure to consider the federal claim will result in a miscarriage of justice. Casey, 386 F.3d at 921, n.27; Carter v. Giubino, 385 F.3d 1194, 1197 (9th Cir. 2004), cert. denied, 125 S.Ct. 1406 (2005).

In the instant proceeding, respondent argues that *all* of petitioner's grounds for relief are procedurally defaulted because they are barred by an independent and adequate state procedural rule, and because petitioner failed to fairly present the claims to the state courts. I disagree.

**A.   Ground for Relief 1 - Denial of Right to Confrontation.**

In his first ground for relief, petitioner alleges that the state trial court violated his Sixth and Fourteenth Amendment right to confront witnesses when it admitted the videotape containing the testimonial hearsay statements of Sabrina Givens.

Respondent complains that this ground for relief, albeit contained in petitioner's supplemental *pro se* brief on direct appeal, was presented as part of a "scattergun" presentation of 16 claims. Respondent argues that the *pro se* brief would not have been considered by the Oregon Court of Appeals because it failed to comply with many Oregon Rules of Appellate Procedure. Additionally, respondent argues that the confrontation issue was

7 -- OPINION AND ORDER

not supported with a statement of facts demonstrating a right to relief. Respondent concludes that the claim is either barred by an independent and adequate state procedural rule or was not fairly presented to the Oregon appellate courts so as to satisfy the exhaustion requirement.

Because the Oregon Court of Appeals did not reject petitioner's *pro se* brief for failure to comply with an independent and adequate state procedural rule, I summarily reject respondent's reliance upon the independent and adequate state law doctrine. See Carter, 385 F.3d at 1197 (state ground is independent and adequate only if state court actually relied on a state rule that was sufficient to justify the decision).

Similarly, I reject respondent's argument that the confrontation claim was not fairly presented because it was raised in a procedural context in which it would not be considered. Petitioner was granted permission by the Court of Appeals to file a *pro se* supplemental brief. In the supplemental brief, petitioner stated:

> The Oregon State and Federal Constitutional Violation(s) of the Rights to Confront Witnesses making complaints, US Const. Amend. 6, Constitution of Oregon, Article I, Section: 11, rights to have face to face meeting with complaining witnesses, having compulsory processes for redress of actions. . . . That cross-examination was denied, to which this is a right. And that it is record that facts of the video being admissible were made objected to by attorney of record of this case(s), but to no avail that this reflective

material was denied relief by way of dismissal of case(s).

(Resp. Exh. 104 at 2.)

Additionally, petitioner listed the federal constitutional rights allegedly violated including "Amendment VI: . . . denied the Federal right to properly confront witnesses . . . ." (Id. at 7.) In petitioner's petition for review to the Oregon Supreme Court, appellate counsel requested the "court to review the issues [petitioner] raised in his pro se supplemental appellant's brief." (Resp. Exh. 106 at 4.)

Respondent complains, however, that petitioner's *pro se* supplemental brief did not contain a statement of issues presented on appeal, a summary of argument, a summary of facts, or any assignments of error, much less set forth the pertinent portions of the record to support an assignment of error. Further, respondent notes that petitioner did not raise the confrontation issue as a "question presented" to the Oregon Supreme Court.

Respondent provides no authority demonstrating that the Oregon appellate courts strictly apply the appellate rules to *pro se* briefs. Cf. State v. Windress, 90 Or.App. 277, 752 P.2d 326 (1988) (although the *pro se* appellant's "disregard of the rules of appellate procedure" made it unclear what he claimed, court of appeals addressed the assignments of error as framed in the state's response brief). In this regard, it is worthy of note that the

Court of Appeals has since adopted a rule specifically providing that an appellant filing a *pro se* supplemental brief need only "attempt to prepare [the] brief as nearly as practicable in proper appellate brief form." Accordingly, I reject respondent's contention that petitioner raised his confrontation claim in a procedural context in which it would not be considered. Additionally, I conclude that petitioner sufficiently provided the factual basis of his confrontation claim for exhaustion purposes.

**B. Ground for Relief 3 - Ineffective Assistance of Counsel.**

In ground for relief 3(A), petitioner alleges that trial counsel was ineffective because he failed to object to the introduction of prejudicial hearsay statements of Sabrina Givens, admitted through the testimony of her mother, Alison Givens. Respondent correctly argues that this ineffectiveness claim was not presented in petitioner's petition for post-conviction relief or in his subsequent appellate briefs. Accordingly, this ground for relief is procedurally defaulted.

In ground for relief 3(B), petitioner alleges that trial counsel was ineffective because he failed to investigate and present available impeachment evidence pertaining to prosecution witness Alison Givens. I agree with respondent that this ground for relief is procedurally defaulted due to petitioner's failure to raise the issue in his appeal from the denial of post-conviction relief. Petitioner has made no showing of cause and prejudice or

10 -- OPINION AND ORDER

argued that a miscarriage of justice will occur if the court fails to review grounds for relief 3(A) or (B). Accordingly, I decline to address those grounds for relief.

In ground for relief 3(C), petitioner alleges that *appellate* counsel failed to assign error to the admission of the videotaped statements of Sabrina Givens as violative of the Confrontation Clause. Respondent argues that this claim is procedurally defaulted because it was not fairly presented on appeal from the denial of post-conviction relief. Specifically, respondent argues that, on appeal, petitioner argued only that appellate counsel was ineffective for failing to challenge the constitutionality of the victim's absence from the competency hearing rather than the admissibility of the videotape at trial.

I am not convinced that the distinction raised by respondent is controlling for exhaustion purposes. In challenging the effectiveness of appellate counsel, petitioner identified the constitutional provision at issue, and cited to Pointer v. Texas, 380 U.S. 400, 403 (1965) (holding that the Sixth Amendment right to confrontation, including the right to cross examination, is obligatory upon the states by the Fourteenth Amendment). In his "Summary of the Argument", petitioner complained that the prosecution failed to produce Sabrina Givens as a witness at trial. Although petitioner may have focused upon the absence of Sabrina from the competency hearing, I conclude that petitioner fairly

11 -- OPINION AND ORDER

presented the Confrontation Clause issue as it relates to the admissibility of the videotaped testimony at trial.

**II. THE MERITS.**

    **A. Ground for Relief 1 - Denial of Right to Confrontation.**

In <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004), the U.S. Supreme Court held that the Sixth Amendment right to confrontation precludes the admission of out-of-court testimonial evidence, regardless of its reliability, unless the witness is unavailable *and* the defendant had a prior opportunity for cross examination. The Ninth Circuit recently held that <u>Crawford</u> applies retroactively to collateral proceedings. <u>Bockting v. Bayer</u>, 399 F.3d 1010 (9th Cir. 2005).

This court is bound by the <u>Bockting</u> decision despite the conflicting circuit opinions[2] and despite the pendency of a request for rehearing *en banc*. <u>Hasbrouck v. Texaco, Inc.</u>, 663 F.2d 930, 933 (9th Cir. 1981), <u>cert. denied</u>, 459 U.S. 828 (1982); <u>Chambers v. United States</u>, 22 F.3d 939, 942 n.3 (9th Cir. 1994), <u>vacated on other grounds</u>, 47 F.3d 1015 (9th Cir. 1995). I further conclude that an order staying this proceeding, pending resolution of the

---

[2] All other circuits to address the issue have concluded that <u>Crawford</u> does not apply retroactively. See <u>Murillo v. Frank</u>, 402 F.3d 786, 790-91 (7th Cir. 2005); <u>Dorchy v. Jones</u>, 398 F.3d 783, 788 (6th Cir. 2005); <u>Mungo v. Duncan</u>, 393 F.3d 327, 335-36 (2nd Cir. 2004), <u>cert. denied</u>, 2005 WL 429805 (2005); <u>Brown v. Uphoff</u>, 381 F.3d 1219, 1226-27 (10th Cir. 2004), <u>cert. denied</u>, 125 S.Ct. 940 (2005); <u>Evans v. Luebbers</u>, 371 F.3d 438, 444-45 (8th Cir. 2004), <u>cert. denied</u>, 125 S.Ct. 902 (2005).

petition for rehearing *en banc* in Bockting, is not appropriate. See Young v. I.N.S., 208 F.3d 1116, 1120-21 (9th Cir. 2000). Accordingly, I apply the rule in Crawford to the instant proceeding.

The videotaped statement of Sabrina Givens, given to Detective Sergeant Long is "testimonial," as that term is used in Crawford. Crawford, 124 S.Ct. at 1364. Hence, it was a violation of petitioner's Sixth Amendment right to confrontation to admit the videotape in the absence of a prior opportunity to cross examine Sabrina. Crawford, 124 S.Ct. at 1374; Bockting, 2005 WL 406284 *10. It is uncontested that no such opportunity existed.

Although violation of the right to confrontation is subject to a harmless error analysis, the admission of the videotaped statement was not harmless error in light of the fact that (1) Sabrina denied the sexual abuse to Dr. Candelaria; (2) the results of Dr. Candelaria's examination were non-specific; and (3) Sabrina's "spontaneous" statements to her mother where more general than her videotaped testimony. In short, I conclude that Sabrina Givens' statement to the detective was a "critical piece of evidence" and was "so significant that the error could have materially affected the verdict." See Bockting, 2005 WL 406284 *11. Hence, admitting Sabrina Givens' videotaped statement was not harmless beyond a reasonable doubt. Id.

13 -- OPINION AND ORDER

Consequently, the trial judge's admission of Sabrina Givens' videotaped statement, based upon his conclusion that it bore certain indicia of reliability, was contrary to established Supreme Court precedent in Crawford, as made retroactive in Bockting. Accordingly, federal habeas corpus relief is warranted. In so holding, I limit habeas relief to petitioner's conviction in case number 95-CR-0839, involving Sabrina Givens. In light of the strength of Charlene Dilbeck and Kimberly Harris' testimony, I conclude that admission of Sabrina's out-of-court statement was harmless beyond a reasonable doubt as to petitioner's convictions in case number 95-CR-0833.

**B. Ground for Relief 2 - Prosecutorial Misconduct.**

In his second ground for relief, petitioner alleges that the prosecution engaged in prosecutorial misconduct by calling petitioner a liar in closing argument. Petitioner has not addressed this ground for relief in his briefing to this court. I summarily reject it. See Darden v. Wainwright, 477 U.S. 168, 181 (1986) (claim of prosecutorial misconduct requires proof that comments so infected the trial with unfairness as to make conviction a denial of due process).

**C. Ground for Relief 3(C) - Ineffective Assistance of Appellate Counsel.**

In his third ground for relief, petitioner alleges that appellate counsel was ineffective for failing to raise the

confrontation issue on appeal.  A claim of ineffective assistance of counsel, requires petitioner to prove that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Bell v. Cone</u>, 535 U.S. 685, 695 (2002); <u>Williams v. Taylor</u>, 529 U.S. 362, 390-91 (2000); <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1987).

Petitioner has failed to demonstrate that appellate counsel's performance fell below an objective standard of reasonableness. Although an appeal premised upon the holding in <u>Crawford</u> would have been successful, that decision was issued years after the completion of petitioner's direct appeal. Appellate counsel cannot be faulted for failing to anticipate that decision.  <u>See</u> <u>Strickland</u>, 466 U.S. at 689-90 (requiring a showing that attorney's actions were outside wide range of reasonable professional assistance, as evaluated from counsel's perspective at time of allegedly deficient performance); <u>Lowery v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994), <u>cert. denied</u>, 513 U.S. 1001 (1994) (same).  Hence, the state post-conviction court's conclusion that appellate counsel was not ineffective is neither contrary to, nor an unreasonable application of clearly established federal law.

## **CONCLUSION**

Based on the foregoing, petitioner's amended habeas corpus petition (#33) is GRANTED.  IT IS ORDERED that petitioner's conviction in case number 95-CR-0839 is VACATED.  If not retried within 90 days of the date of this order, petitioner shall be released from confinement.

IT IS SO ORDERED.

DATED this 26th day of April, 2005.

_/s/  Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Judge